IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAI CORPORATION, | No. C-06-00767 EDL |
| Plaintiff, | **ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE AND TO DISMISS** |
| v. | |
| INTEGRATED SCIENCE SOLUTIONS, INC., et al. | |
| Defendants. | |

Plaintiff PAI Corporation brought this breach of contract action against Defendants Integrated Science Solutions, Inc. ("ISSi"), Cecelia McCloy and David Dobson. In the first amended complaint, Plaintiff asserts claims for breach of contract, inducement of breach of contract, unfair competition and fraud. On April 6, 2006, Defendants filed a motion to strike Plaintiff's request for treble damages on the breach of contract claims, to dismiss the claims for inducement of breach of contract, unfair competition, and fraud or, alternatively, to require a more definite statement as to the claims for inducement, unfair competition and fraud. The matter was fully briefed and the Court held a hearing on May 16, 2006. For the reasons set forth at the hearing and in this Order, the Court grants in part with leave to amend and denies in part Defendants' motion to strike and to dismiss.

**Facts**

Plaintiff, a Tennessee corporation, bids for and contracts with governmental agencies to provide governmental safety and environmental services. First Am. Compl. ¶ 6. In anticipation of bidding on a NASA contract, Plaintiff entered into a Teaming Agreement on May 10, 1999 with

Defendant ISSi that provided that if Plaintiff were awarded the NASA contract, it would hire ISSi as its subcontractor. First Am. Compl. ¶ 8. The Teaming Agreement provided, *inter alia*, that ISSi would not compete for contracts and would not recruit or hire Plaintiff's employees without prior consent. First Am. Compl. ¶ 9. The parties also agreed to keep confidential for three years any information received under the Teaming Agreement, except in certain circumstances. First Am. Compl. ¶ 11.

Plaintiff was awarded the NASA contract and subsequently, on March 6, 2000, entered into a Subcontract Agreement with ISSi. First Am. Compl. ¶ 12. The Subcontract Agreement identified Defendant McCloy as an officer of ISSi and Defendant Dobson as the vice-president. First Am. Compl. ¶ 13. The Subcontract Agreement contained, *inter alia*, a confidentiality clause, and stated that Defendants agreed not to solicit or offer employment to Plaintiff's employees. First Am. Compl. ¶¶ 14, 16.

Plaintiff entered into three Employment Agreements with Defendant McCloy, one Agreement Regarding Confidentiality of PAI Executive Information and two Potential Conflict of Interest Disclosures. First Am. Compl. ¶ 18. Under those agreements, Ms. McCloy promised to keep proprietary information confidential and to return all documents containing confidential information at the end of the agreements. First Am. Compl. ¶ 18. Handwritten on the first Agreement by Ms. McCloy was: "I will remain President of ISSi and continue marketing and business development activities in that capacity." Mot. to Dismiss Ex. A; First Am. Compl. ¶ 19. On a later Agreement, Ms. McCloy wrote: "I am corporate officer w/ISSi." First Am. Compl. ¶ 19.

Plaintiff alleges that Defendants subsequently competed against Plaintiff for an extension of the very contract under which ISSi was Plaintiff's subcontractor. First Am. Compl. ¶ 19. Plaintiff alleges that in 2004 NASA issued a Request for Proposals to provide environmental services to replace the scope of the environmental services contract that Plaintiff won in 1999/2000. First Am. Compl. ¶ 20. According to Plaintiff, Defendants wrongfully solicited Plaintiff's employees to work for ISSi in the event that ISSi won the new contract, and included some of Plaintiff's key employees in ISSi's proposal for the new contract. First Am. Compl. ¶ 20. NASA awarded the contract to ISSi, with Plaintiff placing second in the bidding. First Am. Compl. ¶ 20.

2

//

**Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing with those issues before trial. Fantasy Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993). Because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant as a dilatory tactic, motions under Rule 12(f) are disfavored. 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d, § 1380 at 394 (2004); see also Judge William W. Schwarzer, et al., Federal Civil Procedure Before Trial, § 9:375 (Rutter Group 2003). On a motion to strike, the Court must construe all allegations in the light most favorable to Plaintiff. Botosan v. Fitzhugh, 13 F.Supp.2d 1047, 1051 ( S.D. Cal. 1998).

Defendant moves to strike the treble damages allegations contained in Plaintiff's breach of contract claims. In those claims, Plaintiff alleges that Defendant ISSi breached the Teaming Agreement and the Subcontractor Agreement by, *inter alia*, competing against Plaintiff using Plaintiff's proprietary information, soliciting Plaintiff's employees, and misappropriating Plaintiff's confidential information, and that Defendant McCloy breached the Confidential Agreements that she signed by, *inter alia*, using Plaintiff's proprietary information, soliciting Plaintiff's employees, and misappropriating Plaintiff's confidential information. First Am. Compl. ¶¶ 24, 32. Plaintiff alleges that it is entitled to treble damages against Defendants "resulting from or incidental to the breach of contract, including attorney fees and costs incurred in prosecuting this action and such other relief as the Court deems necessary and proper." First Am. Compl. ¶¶ 28, 36.

Plaintiff bases its claim for treble damages on the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-109(a). Notably, Plaintiff's complaint does not allege a claim for violation of the TCPA. The trebling of damages under the TCPA is in the nature of punitive damages. Smith Corona Corp. v. Pelikan, Inc., 784 F. Supp. 452, 483-84 (1992). Treble or punitive damages are generally not available for breach of contract. Restatement (Second) of Contracts §

3

355 (2005). Unless Plaintiff can state a claim for a violation of the TCPA, it is not entitled to the Act's remedies. See Myint v. Allstate Ins. Co., 970 S.W.2d 920, 926 (Tenn. Sup. Ct. 1998) (affirming dismissal of TCPA claim and stating that the plaintiff was not entitled to the TCPA remedies because there had been no violation of the Act). The Court will grant leave to amend to state such a claim, but cautions Plaintiff that it may not be able to do so in good faith because the TCPA is focused on consumer transactions, not contractor/subcontractor agreements as here. Therefore, Defendant's motion to strike the treble damages allegations in paragraphs 28 and 36 and in the prayer for relief is granted.

Defendants also request that the language "PAI Corporation Potential Conflict of Interest Disclosure," in paragraph 24, lines 24-25, be stricken because there are no factual allegations that there was such an agreement or that it was breached. However, Plaintiff alleges that Defendant McCloy entered into two Potential Conflict of Interest Disclosure Forms on which she wrote that she was a corporate officer of Defendant ISSi and that she would pursue marketing and development activities for ISSi. First Am. Compl. ¶ 19. Further, Plaintiff alleges that ". . . defendant breached its agreements with plaintiff by failing and refusing to comply with those provisions of the Teaming Agreement, PAI Corporation Potential Conflict of Interest Disclosure, and Subcontract Agreement . . . ." First Am. Compl. ¶ 24. Accordingly, the motion to strike the language from paragraph 24 is denied.

**Motion to dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The parties raise a threshold issue of whether the law of Tennessee or California applies as to

4

some or all of Plaintiff's claims.   Both the Teaming Agreement and the Subcontractor Agreement contain provisions designating Tennessee law as the choice of law.  First Am. Compl. ¶ 4.  Because the choice of law issue is not dispositive of the Court's decision on this motion to dismiss and was not adequately briefed by the parties, the Court declines to decide the issue at this time.

### Inducement of breach of contract claim

Defendants move to dismiss Plaintiff's claim that Defendants induced a breach of Plaintiff's employment agreements with its employees.  Under Tennessee law, inducement to breach a contract requires seven elements: "(1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that a breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the plaintiff."  Givens v. Mullikin, 75 S.W.3d 383, 405 (Tenn. Sup. Ct. 2002).  Under California law, the tort is called interference with contractual relations (see 5 Witkin, Summary of California Law, § 731), and requires the following elements: "(1) a valid contract between the plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal.4th 26, 55 (1998).

Plaintiff has sufficiently pled an inducement claim under either state law.  Plaintiff alleges that on or before August 30, 2004, it had verbal or written employment contracts with its employees with respect to Plaintiff's performance under the prime contract.  First Am. Compl. ¶ 38.  Plaintiff alleges that all Defendants were aware of those employment contracts.  First Am. Compl. ¶ 39.  Plaintiff alleges that Defendants solicited key employees from Plaintiff to work for ISSi in connection with the subsequent NASA contract, even though Plaintiff and Defendants had entered into Agreements prohibiting solicitation of the employees and Defendants knew of the prohibition against solicitation of Plaintiff's employees.  First Am. Compl. ¶¶ 40, 41.  Plaintiff alleges that Defendants intended to induce breach of the employment contracts and that they acted with malice.  First Am. Compl. ¶ 41.  Plaintiff alleges that the breach of the contracts were a proximate result of Defendants' conduct and that the breach caused Plaintiff to be injured in that it lost its bid for the

5

subsequent NASA contract. First Am. Compl. ¶ 41. Plaintiff claims that it has been injured in an amount in excess of $3.5 million and in its reputation. First Am. Compl. ¶ 41. This is sufficient for notice pleading.

Defendants also argue that the inducement claim against Defendant McCloy should be dismissed because she is immune as a corporate officer, director or employee of a corporation who can only be liable if she acted outside the general range of her authority or acted in a manner not substantially intended to further the corporation's interests. Waste Conversion Sys. v. Greenstone Indus., 33 S.W.3d 779, 782 (Tenn. Sup. Ct. 2000) (addressing the question of whether a parent corporation can be liable for inducement of breach of contract when it induces a wholly-owned subsidiary to breach a contract and holding that the parent corporation cannot be liable); Forrester v. Stockstill, 869 S.W.2d 328, 334-35 (Tenn. Sup. Ct. 1994) (addressing whether corporate officers can be liable for inducement for breach of contract in a case where an at-will employee sued his former employer where corporate officers made statements that eventually led to the termination, and holding that they were not liable because the officers were acting in the best interests of the company). These cases are inapposite. Here, Defendant McCloy was Plaintiff's employee (First Am. Compl. ¶ 18) who allegedly actively solicited Plaintiff's employees to breach their employment contracts. Defendants' motion to dismiss the inducement claim against Defendant McCloy is denied.

**Unfair competition claim**

In support of its unfair competition claim, Plaintiff alleges that when Defendant McCloy was employed by Plaintiff, she "acquired knowledge of numerous trade secrets and practices and secret, personnel and confidential information of plaintiff, utilized, among other things, by plaintiff in the bidding proposals for or performance of its occupational safety, industrial hygiene, hazardous materials and other environmental services contracts with NASA/ARC and other governmental branches. In particular, McCloy was given all plaintiff's employee names, addresses and salaries; plaintiff's cost strategies and information, and plaintiff's internal documents." First Am. Compl. ¶ 46. Plaintiff alleges that Ms. McCloy used inside information that she obtained when she worked for Plaintiff to wrongfully recruit Plaintiff's employees, to unfairly compete against Plaintiff for

6

contracts, to bill Plaintiff for project costs in excess of the contractual agreement, to legitimize a greater expense to the government on the contract, to improperly make direct contact with Plaintiff's customers and to misrepresent ISSi's prime customer as NASA. First Am. Compl. ¶ 47. Plaintiff also alleges that Ms. McCloy did not work her required full time schedule when she was employed by Plaintiff, and instead would take time off to work for Defendant ISSi in competition with Plaintiff. Id. Plaintiff also alleges that when Ms. McCloy was working on Plaintiff's project, she displayed promotional materials with ISSi's logo. Id. Plaintiff claims that the misappropriated secret information was its main asset, that Defendants knew that it was confidential and that Plaintiff has been harmed by the disclosure. First Am. Compl. ¶¶ 48-50.

The sufficiency of Plaintiff's unfair competition claim depends upon the statute or law under which it intends to proceed: the TCPA, California's unfair competition law, Cal. Bus. & Prof. Code § 17200, et seq., or common law. It is not clear to the Court from the complaint or from the oral argument which statute or tort is at issue. Moreover, Plaintiff's ability to state a claim for unfair competition depends upon the outcome of a choice of law analysis, which the Court has declined to undertake at this early stage.

At the hearing, Plaintiff's counsel stated that Plaintiff may want to pursue an unfair competition claim under the TCPA. To state a claim under the TCPA, Plaintiff must allege: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . ." Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). It is questionable whether this contractual transaction comes within the definition of "trade," "commerce" or "consumer transaction" contained in the TCPA. Tenn. Code Ann. § 47-18-103(11) (1999) ("Trade," "commerce," or "consumer transaction" means the advertising, offering for sale, lease or rental, or distribution of any goods, services or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated."); see also New Life Corp. v. Nelson, 932 S.W.2d 921 (Tenn. Ct. App. 1996) (holding that the TCPA was not applicable in a case in which the plaintiff alleged that the defendant willfully and maliciously damaged the plaintiff's

7

business when the defendant hired the plaintiff's president to create a plan for the defendant to compete with the plaintiff's business).

Also at the hearing, Plaintiff's counsel stated that Plaintiff may want to allege a claim under California' unfair competition statute. If California law applies, Plaintiff can probably state a claim for unfair competition given the broad reach of California's law. Plaintiff alleged that Defendants took Plaintiff's confidential and proprietary information and used it to compete against Plaintiff in the marketplace. Arizona Cartridge Remanufacturers Ass'n v. Lexmark Int'l, 421 F.3d 981, 986 (9th Cir. 2005) ("'Unfair competition,' under California law, is conduct that threatens incipient violation of antitrust law, or violates policy or spirit of one such laws because its effects are comparable to or same as violation of law, or otherwise significantly threatens or harms competition."). Of course, whether or not Plaintiff can pursue a claim under this California statute may ultimately also depend on the choice of law issue.

Finally, Plaintiff's counsel also stated that it may want to allege a claim of common law unfair competition. KGB, Inc. v. Giannoulas, 104 Cal.App.3d 844, 850 (1980) ("the essence of the tort of unfair competition is the inequitable pirating of the fruits of another's labor and then either 'palming off' those fruits as one's own (deception) or simply gaining from them an unearned commercial benefit.").

Because it is unclear from the complaint and from the discussion at the hearing which law Plaintiff intends to use to allege its unfair competition claim, Defendant's motion to dismiss Plaintiff's unfair competition claim is granted with leave to amend.

**Fraud**

Defendants move to dismiss Plaintiff's fraud claim. Plaintiff alleges that Defendants fraudulently entered into the Teaming Agreement and the Subcontractor Agreement to take advantage of Plaintiff's industry knowledge. Plaintiff has not pled this claim with sufficient particularity. Fed. R. Civ. P. 9(b); see also Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993) (allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud, so that they can defend against the charge and not just deny that they have done anything wrong."). An allegation of breach of contract, without more, cannot be

8

used as evidence that a defendant never intended to honor the contract for purposes of fraud; to permit such use "contradicts the heightened pleading requirements of Rule 9(b) and would allow 'every breach of contract [to] support a claim of fraud so long as the plaintiff adds to his complaint that the defendant never intended to keep her promise.'" Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001) (quoting Richardson v. Reliance Nat'l Indem. Co., 2000 WL 284211, *5 (N.D. Cal. Mar 9, 2000)).

The elements of fraud in Tennessee and California are essentially the same. Under Tennessee law, "the elements of fraud are an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, i.e., it was made "knowingly" or "without belief in its truth" or "recklessly" without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact." Oak Ridge Precision Ind. v. First Tennessee Bank Nat'l Ass'n, 835 S.W.2d 25, 29 (Tenn. Ct. App. 1992). In California, "a cause of action for fraud requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages." Glenn K. Jackson, Inc. v. Roe, 273 F.3d 1192, 1201 (9th Cir. 2001).

Plaintiff alleges that Defendants made certain representations by signing the Teaming Agreement and the Subcontractor Agreement, e.g., that Defendants would not divulge Plaintiff's confidential information, would not recruit or hire Plaintiff's employees identified as potential workers on the NASA contract, would not make direct contact with Plaintiff's customers without authorization, would not make site visits to NASA facilities without prior approval, and would not remove any proprietary information belonging to Plaintiff. First Am. Compl. ¶ 53. Plaintiff alleges that these representations were false and that Defendants only entered into the Teaming and Subcontractor Agreements for the purpose of "riding on PAI's success and gaining inside information about PAI's trade secrets, processes, bidding strategies, confidential, personnel and other proprietary information, . . . in order to enhance ISSi's competitive edge in bidding NASA/ARC and other governmental environmental science contracts." First Am. Compl. ¶ 54. Plaintiff alleges that Defendants actively solicited Plaintiff's employees and visited the site program

9

office without prior notice. First Am. Compl. ¶ 55. Plaintiff says that it was justified in accepting Defendants' representations in the Teaming and Subcontractor Agreements because "McCloy, as program manager, was entrusted with most of PAI's proprietary information regarding NASA/ARC contract because ISSi had agreed it would not misappropriate, divulge, confiscate or otherwise usurp PAI's proprietary assets contrary to its best interests." First Am. Compl. ¶ 56. Plaintiff alleges that Defendants used proprietary information to compete against Plaintiff for the subsequent NASA bid. First Am. Compl. ¶ 57. Plaintiff alleges that as a proximate cause of the fraud, Defendants incurred benefits and Plaintiff has been damaged in an amount in excess of 3.5 million and in its reputation. First Am. Compl. ¶¶ 58-59.

Although Plaintiff has alleged some of the elements of fraud with sufficient particularity, it has not done so with respect to all of them. For example, there is no allegation that the Defendants' representations in the Teaming and Subcontractor Agreements were knowingly false at the time they were made. Plaintiff also fails to allege that the representations were made with the intent to deceive Plaintiff or to induce reliance by Plaintiff or that Plaintiff relied. Accordingly, Defendants' motion to dismiss the fraud claim is granted with leave to amend.

Any amended complaint shall be filed no later than June 2, 2006. The Case Management Conference currently scheduled for June 6, 2006 is continued to June 27, 2006 at 10:00 a.m. The parties shall file a joint Case Management Conference statement no later than June 20, 2006.

**IT IS SO ORDERED.**

Dated: May 22, 2006

ELIZABETH D. LAPORTE
United States Magistrate Judge